The next argued case on the calendar is number 21-1019, Wallace v. Group Long Term Disability Plan Mr. Reimer. May it please the court, I'm Scott Reimer and I'm the attorney for Pam Wallace. A lot of this case revolves around the Dr. Gillis 2019 report. It was not only an examination report, but it was also a detailed analysis of the historical medical record. The district court held that Hartford was within its discretion to put limited weight on it because, I'm sorry, it came almost five years after the beginning of the time frame in question, which began on August 4, 2014. But the thing is, during the claim process, Hartford never rejected the Gillis report because of time relevance. They never exercised their discretion in that regard. You can search the appeal denial letter in vain to find such a reason, and they never rejected it for that reason. In fact, they never told us why they rejected it. Did they reject it, or is it more fair to say they didn't give it as much weight as you would want? Well, in the appeal denial letter, they reference it, say a couple of things about what it says, even though it's a very detailed letter, but then beyond that, they say nothing about it. And he wasn't his treating physician? Excuse me? He wasn't the treating physician, right, Gillis? He was not the treating physician, but he was an examining physician, and he did a detailed analysis of the historical record, just like Hartford's doctor did from the same time frame. And moreover, Hartford could not exercise discretion to give that report less weight because they never had a doctor examine it. So Hartford— Can I just say, the law doesn't require that special weight be given to the claimant's physician, does it? It doesn't, but what we're talking about here is that the Department of Labor regulation requires an insurance company or other plan administrator to consult with an appropriate medical professional before it makes a medical judgment. And the purpose of that is to avoid having a layperson like the appeal specialist here make a determination about a medical record without consulting a doctor. Here, although that medical record was given to their doctor, that doctor said nothing about it. And so by saying nothing about it, it could not have been a consult. But there's no evidence. I mean, it's clear that their doctor did actually review this report. I mean, the finding didn't specifically reference it, but there's no evidence that it wasn't considered, is there? It was listed on his report, yes. But the Department of Labor regulation requires more than it being listed on his report. It requires that doctor to give input to the Hartford claim specialist. And what happened here was that it was listed on the report, but nothing was said about it. And this is not a stray blood pressure measurement or stray treatment note. This was the main report submitted with the appeal. And they never had a doctor comment on it, but even without their doctor commenting on it, they listed it and didn't give it credence. They can't do that. That involved a medical judgment. And so they could do that if they had a medical judgment. If that doctor said something about it, they were within their discretion to give it less weight. But that's not what happened here. Your position is the doctor has to explicitly say, I disagree with what's in this Gillis report. And if the doctor just says, indicates that I've reviewed this report, that's not enough? It's not enough, correct. I don't know if he has to say he has to disagree with it, but he needs to comment on it. He needs to give some input. And there was no input here. And so if I could tease this out, what you're saying is that they did not substantially comply by not referencing enough? I mean, I'm having a hard time with the line drawing. If you could help me know when one is enough and one is not. Right. So let me just address one thing you just said, substantially comply. That's no longer their standard in this circuit. The HALO case, HALO versus Yale Health Plan, specifically held that the substantial compliance standard no longer applies in this circuit. And so it's not enough that they substantially comply with the reg. They have to strictly comply with the reg. And that's what the HALO case said. And so here, they didn't do that. Although the record was given to that doctor, and let me just point out that Hartford actually told that doctor, we want you to comment on it and say why you disagree. There's no question, I think, that it was lacking. The question is how lacking is it and whether or not that's enough for us to do something. I feel it was a violation of the reg. And it was a significant violation because it was something that prejudiced our case significantly by them not considering that record. And what I'm saying is it's not a blood pressure measurement that's in 1,000 pages of records. This is the main record submitted on appeal. And for them not to even comment on it, either by the doctor or even in the denial letter, they don't really say why they didn't consider it. Although the district court said, well, they were able to not consider it because it wasn't as time relevant. But that's not why they didn't consider it. Like, you could look at their letter. They never said that. And that must have been an argument that Hartford made during litigation and not during the claim. Do you mind commenting on the new arguments that you claim that your client didn't get notice of specifically? Which arguments? I'm sorry? The joint deformity, the loss of strength, and the, I think it's pronounced synovitis. Right. Well, Your Honor, those were not mentioned in the earlier denial letter. Like, so those were all issues that were present throughout this claim. And Hartford never mentioned it as a reason for denial. And by not mentioning it, our client had no ability to comment on it or to provide evidence showing that their comments were wrong. And that was a full and fair review violation of the reg also. So that is what gets us in a position where you're arguing that we should get de novo review. Or that you should get it. That violation and also the violation of them not having a doctor review that record. So there are two violations of the Department of Labor regulations. Thank you, Your Honor. Thank you, Counsel.  Good morning, Your Honors. Brian Downey and Troutman Pepper Hamilton Sanders on behalf of Hartford Life and Accident Insurance Company and the Group Long-Term Disability Plan for the Employees of TD America. We'll generally just refer to that as Hartford. Now, after a careful review of a well-developed administrative record, Hartford made the determination that Ms. Wallace's 2010 LTD claim, she was not entitled to ongoing benefits as a result of a physical disability based on the evidence in the administrative record. Judge Ramos did a similar thorough review and applying the arbitrary and capricious standard reached the same conclusion that Hartford's determination was not arbitrary and capricious and that Ms. Wallace was not entitled to additional benefits based on an alleged physical disability. On appeal, Ms. Wallace hired new counsel who offered new arguments that not only were not raised below, but some of which actually directly contradict the arguments she made in the district court. And at their center, those arguments require or ask this court to apply the wrong law to the wrong facts to reach the wrong conclusion. But there's no need to do that because Judge Ramos already applied the right law to the right facts and reached the right conclusion. So we'd ask that this court affirm that decision. So if we – I'm sorry, I didn't mean to cut you off. No. So if we decide that Ms. Wallace did not get an appropriate notice in terms of her rejection with respect to the synovitis and the joint deformity, where does that leave us? Like where in the record did she get notice that she needed to defend on those grounds? Well, so Your Honor, that's a bit of a red herring because the grounds on which she had to defend were that there was no evidence that supported functionality limitations in the record. And that's the issue. So it's not that she has particular conditions. It is that she is not physically disabled from performing the essential duties of any occupation. Included among that, of course, is those kinds of conditions. But the rationale that was offered by Hartford is that she was not – did not establish that she was physically disabled from performing the essential duties of any occupation. And so the rationale – Those conditions – I'm sorry, Your Honor. I thought those conditions weren't raised until – by Hartford until the administrative appeal. They are – those specific symptoms or lack of symptoms show up in the administrative appeal and are mentioned in the final denial letter. Yes, they're not – the rationale for the decision that she has not established that she's physically disabled doesn't change from the initial denial to the final denial. And frankly, it doesn't change from Judge Schoenfield's initial decision that she wasn't physically disabled. So her argument is that that was a sandbagging, and I'm not sure I understand your response. So the response is, Your Honor, what's the – I'm not asking the question. I'm asking myself the question. What is the reason that Hartford reached the determination that she is not physically disabled? What it did was examine all of the records, including the reports from Dr. Gillis as well as the independent medical reviews, and confirmed that that evidence, as they talked about it, did not establish that she was physically disabled. Now, that is all throughout the record. They mentioned in the final denial letter some of the things that were mentioned in the appeal that these particular conditions were out there. But it's not new. It's exactly the same analysis that's always going on because – so a new rationale would be if, for example, suddenly on appeal Hartford said, by the way, this is subject to a preexisting condition exclusion. I found there was a little bit of inconsistency in your argument, and maybe you can help harmonize it for me. I felt at times you were saying these were not new, and then on other times you were saying they could be. They were new, or at least they were different because they were responsive to new evidence. So can you square that circle for me? I certainly hope to, Your Honor. And that issue of no synovitis, those kinds of issues, those show up in her medical records starting as early as 2010. So that's been consistent throughout this claim. The conclusion that Hartford drew from that and the conclusion that all of the independent reviewing physicians draw, and frankly, as you look at her treating physicians who are not imposing restrictions on her anywhere near, with the exception of Dr. Mead, who saw himself as an advocate rather than a physician, and Dr. Gillis, who was hired, you don't see those conditions resulting in the kinds of limitations that would prevent her from being physically capable of performing the essential duties of any occupation. There's no question that she was psychologically incapable of doing that, or psychiatrically, whichever term one wants to use, by her OCD. There's no dispute about that. But she's already received all of those benefits. But the underlying analysis that these records do not support the conclusion that she is physically incapable of performing the essential duties of any occupation, that Hartford concluded several times, and that's been true throughout. So I don't know if that squared it, but hopefully it at least rectangled it. I think I'll keep thinking on it. Can you also let me know whether or not, whether or not it would be a manifest injustice for us to have some more development and have her have the opportunity to respond to the synovitis and the joint deformity claims? Like, it's new, right, to her, and she didn't get to defend on that. Well, Sarah, I would differ with you that it's new. Please, I'm inviting you to differ. But it's sort of we are now in a circle, and I think you and I are maybe walking in a circle around the same bush right now, which is that the fact that on the appeal she submitted additional evidence, Hartford discussed that and mentioned that the evidence did not support that she was physically disabled. That's what every independent physician has concluded, and mentioned that part of that is the underlying evidence that's all throughout her eight years or nine years of records that she doesn't have these conditions is not a new argument. It's the same rationale throughout. And the argument, and we've heard this, we've seen it in the briefs and heard it in the oral argument, that what the appellant is trying to do here is really to transform the 2002 regulations, which are the ones that govern this, by the way, not the 2018 regulations, because this is a 2010 claim. Wait a minute. But I read it. It says this regulation applies to all claims for disability benefits filed on or after January 1, 2018. Correct. This claim for disability benefits was filed in probably July of 2010. She physically filed it because she, okay. Even if it arose in 2010, which I think there's no dispute, she filed this in 2018. No, Your Honor, and I'm glad you said that because that is a really important distinction. What she did was she discontinued working in 2010. She's satisfied with the policy described as the elimination period, the first 180 days during which she's disabled. And then, according to her, she has remained continuously disabled during that entire time. When this issue happened, the settlement agreement, the prior litigation, which the court, Dr. Schoenfeld's decision, sorry, Judge Schoenfeld's decision, in which she upheld or affirmed Hartford's determination that Plaintiff was not physically disabled, but reversed the determination that she was not psychiatrically disabled, and then that resulted in a remand and a settlement agreement. What that settlement agreement said and what she told the district court is not that this was a new claim. In fact, what the settlement agreement says, that Hartford would agree to accept a voluntary remand of her claim for continuing physical disability benefits. Now, her physical disability benefits began in 2010. That's when she first had them. The claim is that, the argument, so that's her claim. It switched to the point where she had a psychiatric claim, but it's not a new claim. It's a new rationale under the existing claim. Because if it were a new claim, Your Honor, two things would have happened. Number one, she would have had to satisfy the elimination period all over again, which no one has suggested that she had to do. And, in fact, everything the plaintiffs have said is that she should be getting disability benefits throughout the past. So the 180-day period when she would not be entitled to benefits, they've made it clear, doesn't exist. So you would have to do that under a new claim. Number two, and perhaps even more important, if this were a new claim, it would be subject to the analysis of every new claim, which starts with one important question. Was she actively at work before the time she became disabled? The answer to that question would be no, because she hadn't been at work for years. So, actually, treating this as a new claim would be a completely new rationale, which nobody was doing. And it would actually require a new analysis of the question of whether she was actively at work before she filed that claim. And the answer to that would be no. So it would be- Your time is up, but can I- Oh, I'm sorry, Your Honor. No, but I want to briefly ask you about if you could speak to Mr. Reamer's first point about the 2019 Gillis report and what was required. You know, there was a mention that it was reviewed, but not any discussion of it. And that seems to be the thrust of his argument. It is, Your Honor, and it is- I'm sorry, just to add on to that. Sure. In addition, the idea that Hartford specifically wanted its doctor to consider the Gillis report and comment on it and the fact that it appears that he did not. So, sorry, to give you a compound. Okay, so maybe I'll answer those in reverse order, because that statement, which I understand they're making, is wrong. Dr. Gillis was not an attending physician. Dr. Mead was an attending physician. Dr. Darcy was an attending physician. Dr. Bongiovanni was an attending physician. Dr. Gillis was someone who was hired by her lawyer to conduct a review and an examination in an effort to support benefits. He wasn't asked to do a point-by-point analysis of that. What he was asked to do was discuss where he disagreed with the attending physicians, and that's exactly what he did. If that makes sense. Under the 2002 regulations, what Hartford was required to do was to obtain, because this is a medical judgment, obtain medical input from a qualified medical professional with expertise in the medical issue. Dr. Siju is the appellate appeal physician. He is a board-certified rheumatologist with a rheumatological condition. There's no question that he satisfies that. What he has to do is to consult, Hartford has to consult with him. What Mr. Reamer is arguing is that beyond that, what would have to happen is Dr. Siju would have to do a point-by-point discussion of every piece of evidence in the administrative record on which he relied or which he reviewed. I don't know that that's his argument as I heard it. I think it's that there has to be some discussion of it beyond the statement that this was one of the things that was reviewed. But it is because, but Your Honor, I know that's what he's saying, but if you do that and what you're saying is you selectively decide which ones you're going to comment on and there's a requirement that you need to know what the plaintiff is going to say later you should have commented on, that's atextual. It has nothing to do with the regulations. They don't suggest that at all. What they suggest, what they require is that Hartford retain independent medical input. In the judgment of a qualified medical expert, he described everything he consulted and then described what it was that he concluded based on that review. You're making kind of a slippery slope argument. Once we start down that road of saying what they have to say he addressed, we're kind of lost in terms of identifying the things that the report needs to speak to and provide or not. That would certainly be true, Your Honor. And the second piece of that is there's, speaking of slippery, there's a little bit of slippage in the appellant's papers, or a fair amount of it, between the role of the claim administrator, Hartford in this case, the one that actually exercises discretionary authority, and the role of an independent consulting physician. And over and over, there are these suggestions that it's the physician who should be making these declarations about disability or what the physician should be analyzing and that's not what the regulations require and it's not what ERISA contemplates. The decision is always going to be made by the claim administrator because that's who the employer vested with authority to do that, the plan sponsor. But we're not trying to discuss eligibility, right? We're just trying to see if there was a triable fact as to abuse of discretion, right? And that's where I'm a bit stuck with, with respect to, you know, how much line drawing, whether or not it was appropriate to include every single reason or not, right? Like what we're trying to establish was whether or not there's at least a triable fact that should have been examined. So I think maybe more precisely, I think what our focus should be on whether Hartford abused its discretion when it made this determination. And this Court has said repeatedly that standard is, was there substantial evidence to support it, which it describes as more than a scintilla but perhaps less than a preponderance. And maybe the easy way to think about that issue is if the Court looks at Hartford's decision and says that is exactly the same decision I would have reached, Hartford wins. If the Court looks at the decision and says I would not have reached that decision and there is no possible way they could have reached that by looking at this information, Hartford loses. The middle ground is if the Court looks at it and says, you know, I don't think I would have done it this way. But I see how Hartford got there. I see that in this case Hartford reviewed the entire record. I see that Hartford's, the independent physicians with whom he consulted reviewed the entire record, not just portions that have been cherry picked by counsel, but an entire record. And based on that analysis, Hartford reached the conclusion it reached. In those circumstances, even if the Court would say I individually would not reach that, the answer is it's not arbitrary and capricious and the decision should be upheld.  Thank you, Your Honor. Mr. Reamer, you're preserved three minutes for rebuttal. Thank you. As to the old regs and the new regs, we don't need the new regs to prevail here. And the HALO case was a case that interpreted the old regs, not the new regs. And regardless, we would believe that the new regs would apply because the claim was made after June 1, 2018. And the agreement said that they had to submit proof of claim, they had to start from the very beginning of the claim, and that's what she did. But regardless, we don't need the new regs to win. The section, the old regs say basically that you can't have medical judgments be made by lay people. You need a doctor's input. And that's what they didn't do here. And getting back to the synovitis, in our opening brief, we challenged them and said that they never said that these were reasons for denial. In their opposition brief, even though we challenged them, they gave us no reason to see anywhere where they challenged it. They didn't cite anything where those were raised before. Yes, some records talked about synovitis back to 2010, but it was never made an issue that we thought was of concern. Like, if they were saying that that was a concern, they could have said that way back in 2010, and they never did that. I think your adversary is saying, though, it's not that these are the reasons for the denial, that the denial is about finding that she didn't lack the functionality, and this is sort of an example of that as opposed to saying they're denying it because she doesn't have these conditions. Right, right. And to that point, I think that they're drawing too broad of a scope to say what the reason for denial is. If they're saying, well, as long as in the first denial letter we talked that she didn't show that she had the function, and now we're talking still about function, that's too broad of a reason. That's not specific enough. The Department of Labor regs require specific reasons for denial, not just that she's not able to function or not. That's just basic to the definition. So, like, if they had made the same conclusion about the inability to function, but they didn't mention those conditions at all, would that not be a proper ruling, or is that too general at that point? Well, they didn't mention them at all. So going into her appeal, she had no reason to believe that she needed to provide evidence about those three issues. And if they were going to use that as the reason to deny her appeal, they needed to give her notice that those conditions or lack of conditions was something that you need to comment on, and they didn't. You didn't raise this argument in the district court, did you? That argument was not raised in the district court, Your Honor. But full and fair review was raised in the district court. Understood. Any more questions? Okay. Thank you both. Took the case under advisement. The remaining two cases for today are on submission, so that concludes our arguments for today. Thank you. I'll ask the current deputy to adjourn. I will stand adjourned.